**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4501-18T3

MIA MOORE SEALS,
individually and on behalf
of minor child, O.S.,

     Plaintiff-Appellant,

v.

THE PINGRY SCHOOL,
BOARD OF TRUSTEES,
JEFFREY EDWARDS,
NATHANIEL CONARD,
OLAF WECKESSER, DENISE
BROWN-ALLEN, JAKE ROSS,
and TIMOTHY LEAR,

     Defendants-Respondents.

_____

Submitted April 28, 2020 – Decided July 6, 2020

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1940-18.

Mia Moore Seals, appellant pro se.

Venable LLP, attorneys for respondents (Patrick J. Boyle and Allison Brooke Gotfried, on the brief).

PER CURIAM

Plaintiff Mia Moore Seals appeals from a May 10, 2019 order granting defendants' motion to dismiss. After a review of the contentions in light of the record and applicable principles of law, we affirm.

Plaintiff and her ex-husband, Clarence, have two sons who attended The Pingry School (Pingry).[1] Evan, the oldest son, attended the private school from kindergarten until he graduated high school in June 2015. O.S. (Ollie)[2] was a student at Pingry from kindergarten until the start of his sophomore year in September 2016. Pingry requires parents to sign a renewal contract each year.

Beginning in 2012, the Seals were involved in a contentious divorce. Plaintiff left the family home with the two children in April 2012. During Evan's senior year, he refused to inform Pingry what college he had chosen to attend, because he did not want his father to know. As a result, Pingry refused to release Evan's transcripts and he did not attend his graduation.

---

[1] The other defendants held administrative positions at Pingry during these events.

[2] We use initials and a pseudonym to protect the minor's privacy. R. 1:38-3(d)(13).

In July 2015, Villanova University contacted Evan requesting his transcripts. When Pingry would not release the documents to him, Evan filed a complaint in the Chancery Division of the Essex County Superior Court. Although the university accepted a photocopy of an unofficial transcript, the litigation continued for several more months. In October 2015, the court ordered Pingry to provide Evan with his diploma and transcripts.

Ollie was to begin high school in September 2015; however, the Seals could not agree as to whether he should begin at a new school or continue at Pingry. In May 2015, Pingry sent plaintiff a de-enrollment letter regarding Ollie because the 2015-2016 renewal contract, due in March 2015, had not been signed. Plaintiff did not want Ollie to attend Pingry because of the issues Evan had experienced with the school. Clarence wanted Ollie to continue attending Pingry because of the education and opportunities it offered.

Therefore, in August 2015, the family court conducted a hearing to determine whether it was in Ollie's best interests to attend Pingry or another school. On August 12, 2015, the family court ordered Ollie to attend Pingry for

 A-4501-18T3

the upcoming school year and appointed Clarence the "educational parent" with whom Pingry would communicate and correspond.[3]

Ollie's grades were poor during the 2015-2016 school year. According to plaintiff, Ollie also became depressed. On September 7, 2016, the first day of Ollie's sophomore year, he left the school. He sent the Headmaster, defendant Nathaniel Conard, the following email:

> The conditions that I am being put under are tremendously hurtful and malicious. I struggled last year academically and I refuse to allow myself to go through that again. I need to be somewhere I don't have to worry about the disgraceful situation I am being put under. I won't be attending any classes, and would like for this not to become a large spectacle, but if need be, I will indeed make it one. Please remove yourself from the already damaging situation you have put me in and stop this craziness immediately. I cannot attend a school that allows and participates in destructive behavior and I will be leaving this school, one way or another.

Plaintiff initiated the present lawsuit individually and on behalf of Ollie in September 2018. When defendants moved to dismiss the complaint for failure to state a claim under Rule 4:6-2(e), plaintiff opposed the motion and cross-moved for leave to file an amended complaint. The court granted plaintiff's

---

[3] Pingry's representatives testified they would only re-enroll Ollie if Clarence was the "educational parent."

A-4501-18T3

cross- motion. In an amended complaint filed in January 2019, plaintiff alleged: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) negligence; (4) intentional infliction of emotional distress; and (5) violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to 10:5-49.

Defendants again moved to dismiss the complaint for failure to state a claim under Rule 4:6-2(e). Defendants argued the claims were barred by the statute of limitations as the events described in the complaint occurred more than three years earlier. Defendants also asserted plaintiff's allegations lacked factual support. For instance, there was no contract between the parties and therefore there could be no breach of contract or breach of covenant of fair dealing claims. According to defendants, there were only conclusory statements regarding the intentional infliction of emotional distress and LAD claims.

In an oral decision issued May 9, 2019, the court granted defendants' motion. The court initially concluded all the claims were subject to a two-year statute of limitations and were therefore barred. Nonetheless, the court proceeded to address the asserted causes of action and found the claims were factually deficient.

The court stated:

It is . . . clear from a liberal reading of plaintiff's complaint that she seeks to hold [Pingry] responsible for the way she believes she and her . . . children were treated. This is evident from the long history recounted in the complaint . . . .

Especially telling is her recitation of the events surrounding her older son, Evan's, experience at [Pingry]. He is an adult and not a party to this suit.

. . . .

Plaintiff . . . references the August 25, 2015 re-enrollment letter which agreed to accept [Ollie] if [plaintiff] was removed from his education.

As defendant[s] note[] in their papers, plaintiff makes no mention of the fact that [Ollie] was compelled to attend [Pingry] pursuant to the August 12, 2015 order [of the family court].

Also in that same order, . . . Clarence . . . was named . . . the [Pingry] education parent. [P]laintiff cannot now use Pingry's actions in complying with a valid court-issued order to form the basis for her claims against [Pingry].

The court found many of the allegations in the complaint arose out of the Seals' contentious divorce and were not actionable against defendants.

In addressing the breach of contract claim, the court noted plaintiff's allegations that defendants breached a contract by denying her "material information and access to discussions pertaining to her children" and "denying both children the educational experience and support reasonably expected . . . ."

6

However, the court found there was no contract in existence between the parties and plaintiff had not established the violation of any contractual obligation. As a result, the claims for breach of the covenant of good faith and fair dealing failed as well.

In turning to plaintiff's negligence claim, the court found plaintiff had not articulated a "cognizable tort duty under the law." The court similarly concluded that plaintiff had not established a claim for intentional infliction of emotional distress or a violation of the LAD. In discussing the LAD claim, the court stated:

> Plaintiff only pled that she was a member of a protected class and that racial discrimination was more likely than not a motivating cause of [Pingry's] actions. She did not allege facts sufficient to suggest the school's actions were attributable to either her or her son's race.

On appeal, plaintiff argues the court erred in (1) dismissing the complaint with prejudice; (2) denying the existence of a contract; (3) misapplying the statute of limitations; (4) concluding Pingry did not owe her or Ollie a duty; (5) finding the continuing violation theory did not apply; and (6) denying the LAD claims.[4]

---

[4] Plaintiff did not address the dismissal of her intentional infliction of emotional distress claim in her appellate brief. As a result, we deem the issue waived on appeal. See Dempsey v. Alston, 405 N.J. Super. 499, 519 (App. Div. 2009) (citing Weiss v. Cedar Park Cemetery, 240 N.J. Super. 86, 102 (App. Div. 1990)).

We review de novo a trial court's determination of a motion to dismiss under Rule 4:6-2(e). Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019) (citing Stop & Shop Supermarket Co. v. Cty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017)). "[N]o deference [is owed] to the trial court's legal conclusions." Ibid. (citing Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)).

"[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). Like the trial court, we "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). We accord plaintiff "every reasonable inference of fact." Ibid. (citing Indep. Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89 (1956)).

Mindful of these principles, we turn to plaintiff's claims. We begin with the breach of contract cause of action. "To prevail on a breach of contract claim,

a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[] damages." EnviroFinance Grp., LLC v. Envtl. Barrier Co., 440 N.J. Super. 325, 345 (App. Div. 2015) (citing Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007)).

Plaintiff alleged she signed renewal contracts each year with Pingry. However, the final contract she executed was in March 2014 for the 2014-2015 school year. She did not sign the contract sent to her in March 2015 pertaining to Ollie's enrollment for the 2015-2016 school year. Moreover, plaintiff objected to Ollie attending Pingry for high school and was litigating the issue in the family court in August 2015.

Plaintiff has not established a contract existed between she and Pingry or that Pingry failed to perform a defined contractual obligation. Therefore, plaintiff cannot sustain her breach of contract claim or the related breach of covenant of good faith and fair dealing claim.

Plaintiff also asserted a negligence claim against defendants, alleging the following:

> Schools are held to a high standard of care and have a duty to treat students fairly and subject them to rules and policies that are fair and consistent for everyone. Schools also have a duty to engage honestly with

parents to promote the well-being and dignity of their children.

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '"(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages."'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citations omitted). The allegations in the complaint do not support a cognizable tort claim.

Further, even assuming a duty existed, plaintiff failed to demonstrate any duty was breached by defendants. As noted by the trial court, "Pingry's actions were guided by [Clarence], who was . . . the court-appointed authority with respect to [Ollie's] education."

Plaintiff also contends it was error to dismiss her LAD claims. In her complaint she alleged that she and Ollie are black and enjoy a protected status. And that "[r]acial discrimination was more likely than not a motivating cause of [the] adverse actions detailed throughout th[e] [c]omplaint."

In dismissing the LAD claim, the court found plaintiff "did not allege facts sufficient to suggest the school's actions were attributable to either her or her son's race." We agree. Conclusory statements, without supporting evidence, are insufficient to sustain a LAD claim. Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 79 (App. Div. 2004).

A-4501-18T3

Plaintiff contends the court erred in dismissing the complaint with prejudice. We disagree. Plaintiff was afforded the opportunity to amend her initial pleading. However, for the reasons stated, the amended complaint is deficient. Because plaintiff did not cure the defects contained in the original amended pleading and has not alleged facts to support cognizable causes of action, the court did not abuse its discretion in dismissing the complaint with prejudice. See Johnson v. Glassman, 401 N.J. Super. 222, 246-47 (App. Div. 2008).[5]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] In light of our decision, we need not address the statute of limitations issue.

A-4501-18T3